CITY OF WALDO *v.* Peggy POETKER et al

CA 81-158                                   621 S.W. 2d 491

Court of Appeals of Arkansas
Opinion delivered September 30, 1981

*David B. Simmons*, Public Employee Claims Division, for appellant.

*Tom Forest Lovett, P.A.*, by: *Tom Forest Lovett*, for appellees.

LAWSON CLONINGER, Judge. Appellant City of Waldo appeals from a decision of the Arkansas Workers' Compensation Commission on two grounds: First, the Commission was in error when it found that Act 469 of 1973, Ark. Stat. Ann. §§ 81-1350 — 1356 (Repl. 1976), automatically extends State Fund coverage to city employees in workers' compensation cases unless there was strict compliance with all the exclusionary provisions of the Act; and second, that the

Commission was in error when it found that the failure of appellant to strictly comply with the Act's exclusionary provisions mandates a finding of coincidental or dual coverage, and, consequently, dual liability.

We find no error and we affirm the decision of the Commission.

Act 469 became effective July 1, 1974. It provides that henceforth municipal employees shall be covered under the Arkansas Workers' Compensation Act, and provides a Revolving Fund for payment of claims. Any municipality desiring not to participate in State Fund coverage was required to either secure a private plan providing benefits substantially comparable to State Fund coverage and submit the plan to the Arkansas Workers' Compensation Commission for approval, or to call a referendum of the employees of the municipality.

Prior to the effective date of Act 469 the Commission sent a form letter to the mayors of the state's municipalities explaining the Act and enclosed a questionnaire to be completed by the municipality and returned to the Commission. The questionnaire was completed and returned by the then-mayor of the City of Waldo on December 11, 1973. The completed questionnaire stated that appellant City had a private plan for coverage, did not anticipate holding a referendum of employees, and that the city employees would not be covered by the state plan but would be covered upon a private plan approved by the Commission. On May 8, 1974 the Commission directed a letter to the Mayor of appellant City stating that if the City intended to buy its own workers' compensation policy to cover its employees to furnish the Commission a copy of the private coverage policy before July 1, 1974. Appellant did not respond to the request, although it in fact had a private workers' compensation policy written by appellee Home Insurance Company. Appellant was placed on the list of cities participating in the State Fund coverage and in compliance with the provisions of Act 469 an assessment was made against the City of Waldo's turnback funds for its proportionate share paid by all participating municipalities into the State Fund.

On April 16, 1976 two police officers for the City of Waldo were killed. Appellee Home Insurance Company accepted the deaths as compensable and began payments of dependency benefits to the widows of the police officers, appellees Peggy Poetker and Judy Allen.

When appellee Home Insurance Company discovered that the City of Waldo was covered under the State Fund plan it filed an action with the Workers' Compensation Commission contending that the State should share fifty percent of the liability of the claim. The Commission ruled that by virtue of the fact that appellant failed to submit its policy written by appellee Home Insurance Company to the Commission for approval and consequently suffered a reduction in turnback funds, coverage by the State became automatic on July 1, 1974, and therefore, since "coincidental" and dual coverage existed at the time of the claim the State should share equally in the expense.

Appellant concedes that it did not strictly comply with the terms of Act 469, in that it failed to submit its policy written by appellee Home Insurance Company for approval by the Commission. It argues, however, that even if coverage was automatically extended by statutory mandate due to the failure to strictly comply, a finding of dual liability is error.

There is no question that dual coverage existed at the time the claims arose. Either source of coverage, in the absence of the other, would have been fully liable for benefits, and the City of Waldo was paying both sources of coverage. The fact that appellants did not intend double coverage is irrelevant to a determination of the issue. Coverage by the State was not inadvertent or erroneous after appellant failed to comply with the State's request to submit a copy of the policy issued by the private carrier. Act 469 required that action by the State. It is clear that the intent of the Legislature was not only to insure that all municipal employees have workers' compensation coverage, but also to insure that if a municipality did not elect to be covered under the State plan or to hold a referendum then it had to submit proof that it had coverage substantially comparable to the State plan. The approval of the private plan was not a mere

technicality, but a vital part of the program. Just any private policy or the mere statement that a municipality had a comparable private policy was not sufficient. It was the responsibility of the State to see that an adequate policy was presented for approval or to place the municipality under coverage provided by the State Fund.

Appellant has cited no Arkansas case on the issue of dual liability as it applies to this case. The case of *St. Paul Fire & Marine Ins. Co.* v. *Central Surety & Ins. Corp.*, 234 Ark. 160, 350 S.W. 2d 685 (1961) involved dual coverage by two private carriers, but the question there was one of cancellation under the terms of a statute. The employer had originally maintained a policy for compensation coverage with Central Surety which the employer asked to be cancelled on September 9. Ark. Stat. Ann. 1947 § 81-1338 (b) required that a policy could not be cancelled until the expiration of fifteen days after notice of the cancellation was sent to the Arkansas Workers' Compensation Commission. The statute also provided that if the employer procured other insurance during the fifteen-day period the effective date of the new policy would be the cancellation date of the old policy. St. Paul Fire and Marine wrote the employer a new policy on September 9. A claim arose on October 3 and Central Surety's policy, because of the statutory requirement for notice of cancellation, was not effectively cancelled until October 7. The Court held that in those circumstances there was no good reason for saying that the cancellation did not take effect at least as soon as the notice was given.

In the instant case there was a good reason for the requirement that a copy of the private policy be furnished the Commission, in order that the Commission could determine if the private coverage was substantially comparable to State Fund coverage. If the private policy was not comparable the Commission then had a duty to inform the city employer what had to be done to cure the defects.

The case of *Cowles* v. *State Fund Insurance, et al*, 173 Pac. 2d 722 (1946) dealt with the issue of dual liability. The State of Idaho, which insured private businesses, had a policy covering a logging company. The policy contained a

provision that expressly stated that the policy would be in full force until cancelled by the State Fund and further, expressly permitted the employer to carry additional insurance. The employer secured a private policy, which also recognized the right of the employer to carry additional insurance and requested the State to cancel its policy and return the unearned premium. The State did not send out the cancellation notice as required by law and did not return the premium. A claim arose and the private carrier asked for a portion of the loss. Apportionment was granted, the Court stating that the law of Idaho was definite and long-standing that strict compliance with statutory procedures was necessary to cancel a policy.

Appellant correctly points out that in the case now before the Court, Act 469 did not expressly authorize the City of Waldo to maintain a private plan in addition to the State plan. However, Act 469 did not prohibit dual coverage, and in the event a private plan was to be substituted for the State plan that private plan had to have the approval of the Commission. *St. Paul Fire and Marine Ins. Co. v. Central Surety & Ins. Corp., supra,* does not state that strict compliance with a statute will not be required in a proper case. *St. Paul Fire and Marine* held that the rule of strict construction should not be carried beyond the reason for its existence.

The Commission found that it is inescapable that the Public Employees Claims Division must be viewed in the same light as a commercial carrier would be under the same circumstances. It further found that there would seem to be no question that two commercial carriers providing concurrent or coincidental coverage would be held jointly liable under the same circumstances. Appellant has cited no authority nor presented any compelling argument why the conclusion of the Commission is in error.

Affirmed.

MAYFIELD, C.J., and CORBIN and CRACRAFT, JJ., dissent.

GEORGE K. CRACRAFT, Judge, dissenting. I am unable to

concur in the opinion of the majority that Ark. Stat. Ann. §§ 81-1350 et seq. was intended to provide Workers' Compensation insurance for municipal employees. I view it as merely intending to bring those formerly excluded employees under the protection of the Act and provide measures whereby the payment of these benefits would be assured in the event their employers failed to provide adequate private coverage. The Act places the responsibility for determining if the private insurance is adequate with the Commission and provides for funding the benefits where no commercial insurance is in force. It does not purport to create a contractual relationship between the state and employer as does private insurance. In my opinion it does no more than require the state to stand ready to provide benefits in the event the employer has no insurance or inadequate coverage. The funding of these benefits from municipal turn back funds does not diminish the contractual responsibility of a private carrier, if there be one.

In the case before us the adequateness of the coverage in effect with the private carrier was not in question. Full coverage was afforded by the City of Waldo. I see nothing in the Act which requires that tax funds be utilized to discharge the contractual obligation of the carrier.

I respectfully dissent.

DONALD L. CORBIN, Judge, dissenting. I respectfully, but strongly disagree with the majority. Although there are cases which do suggest the proper reasoning to be used when strict construction of statutes would appear to mandate dual liability, *Pucci* v. *Novel Lithographers, Inc.*, 29 A.D. 2d 590, 285 N.Y.S. 2d 362 (1967), the Supreme Court of Arkansas has given us guidance on the issue of strict construction. *St. Paul Fire and Marine Insurance Co.* v. *Central Surety & Ins. Corp.*, 234 Ark. 160, 350 S.W. 2d 685 (1961) was a case involving Arkansas' cancellation requirements. The employer had originally maintained a policy with Central Surety which it asked to be cancelled. St. Paul wrote the employer a new policy which went into effect on September 9. The claim arose on October 3 and Central Surety's policy was not effectively cancelled until October 7. St. Paul

contended that dual coverage existed at the time of the claim and moved to apportion the loss. Justice George Rose Smith said, in part:

> [T]he rule of strict construction should not be carried beyond the reason for its existence. The legislature was plainly concerned with the protection of employees, but it still permitted an accelerated cancellation date when other insurance had been procured. Double coverage is not contemplated.

The Legislature was concerned about protection of its municipal employees, but to infer that the Legislature intended that the State and Home Insurance Co. both have liability for the City of Waldo's loss, is carrying the rule of strict construction beyond the reason for its existence.

The Administrative Law Judge cited as his sole authority for determining the dual liability, the very old case of *Cowles* v. *State Insurance Fund*, 67 Idaho 165, 173 P. 2d 722 (1946). There, the State of Idaho, who evidently insured private businesses, had a policy covering a logging business. The policy contained a provision that expressly stated that the policy would be in full force until cancelled by the State Fund and expressly permitted the employer to carry additional insurance. The employer secured a private policy, which also recognized the right of the employer to carry additional insurance and requested the State to cancel its policy and return the unearned premium. The State did not send out the cancellation notice as required by law and did not return the premium. A claim arose and the private carrier asked for apportionment of the loss. The Idaho court granted the apportionment, stating that the law in Idaho was definite and longstanding, that strict compliance with statutory procedures was necessary to cancel a policy.

To distinguish the *Cowles* case from the case at bar, it is of utmost importance to note:

(1) Act 469 of 1973 did not expressly authorize the City of Waldo to maintain a private plan in addition to the state plan.

(2) The definite and longstanding rule of strict compliance in the State of Idaho is opposite to the rule of construction announced in *St. Paul Fire and Marine Ins. Co. v. Central Surety & Ins. Corp., supra.*

(3) The State did not provide a contract of insurance coverage.

(4) The State does not insure private industries.

The monies withheld from the City of Waldo's turn-back funds for the state plan were not in any sense of the word a "premium". A premium as used in this sense and as defined in *Webster's New Collegiate Dictionary*, 2nd Edition, is "the consideration paid for a contract of insurance." The Commission found important to their decision that either respondent would have been solely liable if not for the presence of the other. This is true, but it does not imply that the City of Waldo was dually covered. In fact, the City rejected the offer of State Fund coverage and did not know until 1976 that the turn-back funds were being deducted. What existed between the City of Waldo and the State Fund, if anything, was a relationship created by law and not by contract.

Under the statute, a fund is created by the deposit of turn-back monies (taxpayers' monies) that ordinarily would go directly to the municipality. To avoid this withholding by the State, the municipality is required to do one of two things: (1) have an election to deny workers' compensation benefits or (2) send a copy of its private insurance policy to the State for certification. If none of these acts are done by the municipality, then the State will withhold the monies. In fact, the City expressly refused the State coverage. It failed to send the Home policy for certification. On this failure, the State Administrator of the Fund, being charged with being assured that the Waldo employees did in fact have coverage, withheld turn-back monies from the City of Waldo.

The intent of the Legislature is made clear by a partial reading of the emergency clause attached to Act 469 of 1973 which states:

It is hereby found and determined by the General Assembly that Workmen's Compensation benefits are not presently provided for employees of municipalities, while such benefits are provided for employees of the State and its agencies, departments and institutions; . . . .

I would reverse. It is apparent from a reading of the statute and particularly the emergency clause, that the intent of the legislature was to mandate coverage to municipal employees — not to go into the insurance business. I would have no problem had we two private insurance carriers before us. They would have been entitled to apportionment. The Act was to make sure that our municipal employees were protected from loss due to injury. It was not the State's responsibility to see that an adequate policy was presented to them for approval. The State could just go so far, politically. The members of the Legislature recognized the separate governmental status of municipalities.